**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

03 JAN 13 PM 2: 40

DISTRICT COURT
H.D. OF ALABAMA

| | | |
|---|---|---|
| JEFFERY MERRITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 02-PT-1497-E |
| | ) | |
| GEORGIA-PACIFIC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTERED**
**JAN 1 3 2003**

### MEMORANDUM OPINION

This cause comes on to be heard upon Defendant Georgia-Pacific Corporation's

("Georgia-Pacific") Motion for Summary Judgment, filed on November 15, 2002.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Jeffery Merritt ("Merritt") is an African-American male, and was hired by

Georgia-Pacific at its Talladega, Alabama facility on September 11, 1987. *See* Compl. at ¶¶ 3-4;

Answer at ¶¶ 3-4. Merritt was employed by Georgia-Pacific at all times relevant to this lawsuit.

During the events in question, Merritt was a supervisor at the Talladega facility, supervising

approximately twenty-two (22) employees. *See* Compl. at ¶ 7; Answer at ¶ 7.

In March 2001, Georgia-Pacific employee Amy Adair ("Adair") complained to a

supervisor that Merritt had mistreated and disciplined her because she refused to continue their

prior sexual relationship. *See* Def. Ex. 1 at 139-51 (Merritt Dep.). Upon receipt of this

information, Georgia-Pacific began an investigation. As part of this investigation, Human

Resources Safety Manager Brooke Ballard ("Ballard"), Plant Manager Nick Nicoletta

("Nicoletta"), and others, met with Merritt, at which time he denied the allegations. *See* Def. Ex.

3 at ¶ 5. Merritt also offered an explanation as to why he had disciplined Adair. *Id.* Merritt did,

*31*

however, admit to having a prior sexual relationship with Adair. *See* Def. Ex. 1 at 138-42; Ex. 3 at ¶ 5. At this point, Georgia-Pacific did not terminate Merritt, because it found no corroborating evidence that Merritt had engaged in the alleged conduct. *See* Def. Ex. 3 at ¶ 6.

In August of 2001, while investigating sexual harassment allegations against another employee, William Gooden ("Gooden"), Georgia-Pacific received two additional complaints against Merritt. Scarlett Wallace ("Wallace") alleged that Merritt exposed his penis to her when she was in the first aid room. *See* Def. Ex. 2 at ¶ 6; Ex. 3 at ¶ 9. Wallace claimed that she could identify Merritt's penis because it had a mole on it. *See* Def. Ex. 3 at ¶ 9. Wallace also claimed that Merritt had exposed his penis to Mary Sanders ("Sanders"), and that Sanders could corroborate the allegations. *Id.*

On August 9, 2001, Plant Superintendent Paul Lehnherr ("Lehnherr") and Regional Human Resources Manager Giles Ward ("Ward") met with Merritt and asked him about the allegations. They informed Merritt that he had been accused of exposing himself to Wallace and Sanders and that Wallace had identified a mole on his penis. *See* Def. Ex. 1 at 79-80, 89-90; Ex. 2 at ¶ 7. Merritt denied these allegations. *See* Def. Ex. 1 at 89. Georgia-Pacific then met with Sanders, who stated that Merritt had exposed his penis to her in the first aid room. *See* Def. Ex. 2 at ¶ 8; Ex. 3 at ¶ 11. Sanders signed a statement to the same effect. *See* Def. Ex. 3-B.

After receiving this information from Sanders, Lehnherr and Ballard again met with Merritt and informed him that he was being suspended pending further investigation into the allegations. *See* Def. Ex. 1 at 92. Merritt offered to undergo an examination to disprove the descriptions of his penis, specifically, to prove that he did not have a mole. *Id.* at 93. Georgia-Pacific agreed, and set-up a meeting with Dr. Michael Kline, a doctor who practices outside of

2

Talladega.  *See* Def. Ex. 2 at ¶ 10-11.  The meeting took place during Merritt's suspension, on

August 14, 2001.  *See* Def. Ex. 1 at 93-96; Ex. 2 at ¶ 11.  Georgia-Pacific directed Dr. Kline to

fax and mail his findings to Ward's Mississippi office, and to mark the fax and mailing envelope

"confidential."  *See* Def. Ex. 2 at ¶ 12.  Dr. Kline's findings stated that Merritt did not have a

mole; rather, he stated that Merritt had a darkening of the skin near the end of his penis.

*See* Def. Ex. 1 at 99-104; Ex. 2 at ¶ 14.  After reviewing the findings, Ward placed the findings

in a sealed envelope marked "confidential," with instructions on the exterior not to open without

the express authorization of Ward or Georgia Pacific's legal department.  *See* Def. Ex. 2 at ¶ 15.

Georgia-Pacific also asserts that other management individuals involved in the investigation

were told that the results were confidential and that it was against company policy to disclose the

information.  *Id.* at ¶ 20.

   While Merritt was on suspension, Georgia-Pacific again interviewed Wallace.  During

this interview, Wallace provided a detailed description of Merritt's penis.  Wallace described the

mole as being flat, not raised.  *See* Def. Ex. 3-D.  Wallace also submitted a written statement.

*See* Def. Ex. 3-E.

   Georgia-Pacific asserts that in light of Wallace and Sanders' statements and Dr. Kline's

report (i.e., the understandable confusion of a "flat mole" with a "darkening of the skin"), the

gravity of the allegations, the allegations six months before by Adair, and its policy on sexual

harassment, it concluded that Merritt did in fact expose his penis to Wallace and Sanders.

Georgia-Pacific terminated Merritt on August 15, 2001.  Merritt still denies that he ever exposed

himself to anyone.  After his termination, Merritt was replaced by Nathan Cook, an African-

American male.  *See* Def. Ex. 1 at 66; Ex. 2 at ¶ 20.

3

Merritt filed this lawsuit on June 20, 2002, alleging (1) violations of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1981A, (2) retaliation for filing unemployment benefits, and (3) slander. *See* Compl. at 2-4. Merritt has since dropped his Title VII and retaliation claims. Georgia-Pacific now seeks summary judgment on the remaining claims. Merritt's position is not to dispute the facts as recited above as such, but, rather, as will be discussed more fully below, to accuse Georgia-Pacific of failing to properly investigate the allegations and of treating him differently than other employees accused of similar conduct.

To support his position, Merritt filed the affidavits of himself, Charles Oden, Reginald Merritt, and Raymond Evans, all of whom worked in some capacity with Georgia-Pacific. *See* Pl. Exs. 1-4. Georgia-Pacific has filed a Motion to Strike those affidavits. That Motion will be discussed more fully below.

One last factual/procedural aspect of this case should be noted. On January 23, 2002, approximately five months after Georgia-Pacific terminated him, Merritt filed a bankruptcy petition in the Bankruptcy Court for the Northern District of Alabama. That petition was later amended, most recently on August 2, 2002. It is undisputed that Merritt did not list this lawsuit as an asset in his bankruptcy petition when it was originally filed or when it was amended.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for

4

summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

### I. The Motion to Strike

#### A. Defendant's Position

Georgia-Pacific notes that Federal Rule of Civil Procedure 56(e) requires that affidavit testimony submitted in connection with a summary judgment motion be admissible in evidence. *See Hughes v. Amerada Hess Corp.*, 187 F.R.D. 682, 684-85 (M.D. Fla. 1999). As such, an affidavit must comply with the personal knowledge requirements of Federal Rules of Evidence 602 and 701. According to Georgia-Pacific, this requirement means that the witness was in a physical position to see, hear, or otherwise perceive the matter to which their testimony relates. *See* Fed. R. Evid. 602 advisory committee's note. The text of Rule 56(e) also has a personal knowledge requirement. According to Georgia-Pacific, this requirement is designed to prevent affidavits that are speculative, conclusory, or based "upon information and belief," from raising a genuine issue of material fact sufficient to defeat a motion for summary judgment. *See, e.g., Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 851 (11th Cir. 2000) (holding insufficient an affidavit based "upon information and belief").

Georgia Pacific argues that several portions of the affidavits filed by Merritt are conclusory, speculative, and not based on personal knowledge. Specifically, Georgia-Pacific seeks to strike paragraphs 4 and 6 of Merritt's affidavit, paragraphs 2-4 of Charles Oden's affidavit, paragraphs 3-4 of Reginald Merritt's affidavit, and paragraphs 3-6 of Raymond Evans' affidavit. *See* Def. Motion to Strike at 4-5.[1]

In addition, Georgia-Pacific argues, Raymond Evans' affidavit should be stricken in its

---

[1] As an example, Georgia-Pacific takes issue with Raymond Evans' statement that "if Merritt had been white, he would not have been fired." *See* Pl. Ex. 2 at ¶ 3.

entirety because he was never disclosed as a witness in this case.  According to Georgia-Pacific, Federal Rule of Civil Procedure 37(c)(1) provides that a party may not use information from an undisclosed witness in a motion.  Georgia-Pacific contends that Merritt never disclosed Raymond Evans at any point, despite five chances during the discovery process to do so (initial disclosure, supplemental disclosure, depositions, interrogatory responses, and document request responses). *See* Def. Motion to Strike at Exs. A-E.  Georgia-Pacific also notes that Merritt did not even supplement his discovery disclosures when he actually filed Raymond Evans' affidavit.  Georgia-Pacific contends that since the affiant was not disclosed, the affidavit must be stricken.

B.  Plaintiff's Response

Merritt contends that all of the affidavits in questions were based on either personal knowledge, or on conclusions logically drawn from such personal knowledge.  Merritt argues that each affiant stated in his affidavit how he acquired knowledge of the facts stated.  As to Raymond Evans, Merritt argues that he did not realize that Evans would be a witness until he prepared his response to Georgia-Pacific's Motion for Summary Judgment.  Merritt also argues that the facts stated by Raymond Evans are not being presented to Georgia-Pacific for the first time, and that no unfair advantage will result from the court considering the affidavit.  Merritt also seeks to use this response as a discovery disclosure that Raymond Evans is a potential witness in this case.

C.  Defendant's Reply

In reply, Georgia-Pacific basically restates the same facts and arguments as in its original motion.  However, it also argues (1) that Merritt's response is so devoid or legal and factual citation that it should not be considered a response at all, and (2) Merritt's admissions that the

7

affidavits contain "conclusions" in and of themselves makes the affidavits inadmissible.

## II. Section 1981

### A. *Prima Facie* case

#### (1) Defendant's Position

Georgia-Pacific argues that Merritt has failed to make out his *prima facie* case of racial discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).[2]  The *prima facie* case requires Merritt to show (1) that he is a member of a protected class, (2) that he was qualified for the position, (3) that he suffered some adverse employment action, and (4) that he was either replaced by someone outside of his protected class or was treated differently from some other similarly situated person outside of his protected class. *See Crapp v. City of Miami Beach*, 242 F.3d 1017 (11th Cir. 2001).  Georgia-Pacific argues that Merritt cannot establish the last requirement.

First, Merritt cannot show that he was replaced by someone outside of his protected class, because he was replaced by Nathan Cook, an African-American male. *See* Def. Ex. 1 at 66. Second, he cannot show that he was treated differently from a similarly situated person outside of his protected class.  According to Georgia-Pacific, Merritt is alleging that he was treated differently than two other employees who were accused of similar conduct, Harvey Harry ("Harry") and Gooden. *See* Def. Ex. 1 at 135. Georgia-Pacific argues that in order to show that Merritt was similarly situated to these employees, he must show that they committed the same offense under the same circumstances and that a lesser discipline was imposed. *See Holifield v.*

---

[2]Georgia-Pacific notes that the *McDonnell Douglas* burden shifting analysis, while designed for Title VII cases, applies to cases filed under § 1981. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

*Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

As to Gooden, Merritt cannot argue that he was treated differently because, like Merritt, Gooden is an African-American male. According to Georgia-Pacific, the comparator must be outside of the protected class. *See Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999). Moreover, Georgia-Pacific notes, in Gooden's case there was no corroborating evidence or a corroborating medical exam. As to Harry, Georgia-Pacific argues that Merritt must show that he and Harry are "nearly identical." *Holston v. Sports Auth., Inc.*, 136 F. Supp. 2d 1319, 1328 (N.D. 2000). However, as with Gooden, there was no corroborating evidence that Harry committed the act, no other witness to the conduct, no medical evidence, and no prior claim of sexual harassment. *See* Def. Ex. 3 at ¶¶ 23-24. Thus, Georgia-Pacific argues, this court cannot compare Merritt and Harry. *See Maniccia*, 171 F.3d at 1368 ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing business decisions and confusing apples and oranges.").[3]

(2) Plaintiff's Response

To demonstrate that he was treated differently than other employees, Merritt files the affidavit of Raymond Evans, vice-president of Merritt's union. *See* Pl. Ex. 2.[4] Evans states that two other employees, Harry and Gooden, were charged with similar conduct, but not terminated. Harry, a Caucasian, was accused of improperly touching female employees. Gooden, who, while African-American, allegedly has skin "so light that he would as likely be considered a

---

[3]Georgia-Pacific also cites cases from other circuits that have held that employees were not comparators when (1) there was corroborating evidence for one but not the other, or (2) one had been accused of prior misconduct, while the other had not. *See* Def. Br. at 11-12.

[4]Merritt also files his own affidavit discussing Harry and Gooden. *See* Pl. Ex. 1 at ¶ 4.

Caucasian," was also accused of improper touching.  Neither employee was terminated.  In fact, Wallace was one of the employees who made accusations against Gooden, yet Georgia-Pacific chose to believe Gooden, not Wallace.  *See* Pl. Ex. 8 at 21, 24.

### (3) Defendant's Reply

In reply, Georgia-Pacific basically makes its same initial arguments.  First, it notes that Merritt, in his response, failed to address (1) that he was replaced by someone from his protected class, and (2) that he was not similarly situated to Harry or Gooden, because the latter did not have corroborating witnesses or prior allegations of misconduct.  It then cites cases to show why one of those two things (replaced or treated differently) is required to make out a *prima facie* case of race discrimination.  Finally, it cites to more evidence from the record to demonstrate that Merritt was replaced by an African-American, and that Harry and Gooden are not proper comparators.  *See* Def. Reply Br. at 3-5.

### B.  Legitimate, Non-Discriminatory Reason and Pretext

### (1) Defendant's Position

Georgia-Pacific argues that even assuming Merritt has made out a *prima facie* case of race discrimination, it has met its "exceedingly light" burden of offering a legitimate, non-discriminatory reason for Merritt's termination.  *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994).  Given that two witnesses told the same story, there was corroborating medical evidence, and Merritt had been accused of sexual harassment six months prior, Georgia-Pacific argues that it has presented a legitimate, non-discriminatory reason for terminating Merritt.  Thus, Merritt must show that Georgia-Pacific's proffered reason is a pretext for racial discrimination.

10

However, "it is not enough to disbelieve the employer;" rather, a jury must have enough evidence to "believe the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2108 (2000). Here, Merritt admits that Wallace complained and Sanders corroborated that he exposed himself, that Dr. Kline found a discoloration on his penis, and that Adair had complained of prior sexual harassment. *See* Def. Ex. 1 at 79-84, 93, 140-41. According to Georgia-Pacific, Merritt has simply made no case to dispute that it had a legitimate, non-discriminatory reason for terminating him. Courts are not permitted to second guess honest, good faith discipline decisions. *See EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176-77 (11th Cir. 2000) ("An employer who fires an employee under the mistaken but honest impression that the employee violated the work rule is not liable for discriminatory conduct."). Simply put, Georgia-Pacific argues, Merritt's bald assertion of race discrimination is not enough to survive summary judgment. *See, e.g., Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) ("It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action . . . is not enough to survive a summary judgment motion, in the face of . . . an adequate nondiscriminatory reason.").[5]

(2) Plaintiff's Response

To show that the investigation was a pretext to fire him because of his race, Merritt points to inconsistencies in the statements of Wallace and Sanders. Ballard testified that Sanders told her that the incident happened around the time Sanders was married, which was September 23, 2000. *See* Pl. Ex. 9 at 36. Sanders, in her deposition, stated that the incident happened "a

---

[5]Georgia-Pacific also makes much of the fact that it had a duty under federal law to investigate and rectify any allegations of sexually harassing conduct, lest it be liable under Title VII for condoning a sexually hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

11

little after that [the time she was married]." *See* Pl. Ex. 7 at 21-22.  Basically, according to

Merritt, Sanders states that the event happened at some point in late 2000.  By contrast, Wallace,

in her statement dated August 13, 2001, stated that the incident happened "at some point about a

month ago." *See* Pl. Ex. 5.  Merritt argues that the large time difference between the two stories

shows that Wallace and Sanders were not telling the truth.

To further show pretext, Merritt points to the questions that Ward and Ballard *did not* ask

Wallace and Sanders during their interviews.  Among the questions omitted were the distance

between Merritt and Sanders/Wallace, whether his pants were down or merely unzipped, and

whether he was wearing underwear and what condition it was in.  *See* Pl. Ex. 8 at 37-38, 58; Ex.

9 at 32.  Merritt also notes that Georgia-Pacific did not check the first aid log to determine if

Wallace had sought treatment, nor did it check the work schedules for that period to see if

Merritt, Wallace, and Sanders were all working the same shift.  *See* Pl. Ex. 8 at 28, 51.

Third, Merritt points to inconsistencies between Wallace's description of his anatomy

and the description provided by Dr. Kline.  According to Merritt, these inconsistencies included

the existence of a mole, and the amount of hair that Merritt had.  Merritt also notes that Wallace

commented on the size of Merritt's penis while Dr. Kline did not, and that Dr. Kline noted that

Merritt was uncircumcised while Wallace did not.  *See* Pl. Br. at 3; Pl. Exs. 5, 6.

Finally, Merritt points to later events as evidencing Georgia-Pacific's culpability.  First,

he notes that Ward called him and told him that if he would sign a release of all claims against

Georgia-Pacific, it would not contest his claim for unemployment benefits.  *See* Pl. Ex. 8 at 79-

80.  Second, Merritt notes that the Alabama Department of Industrial Relations found that

Georgia-Pacific had not met its burden of proving that he was discharged for misconduct.  *See*

12

Pl. Exs. 11-12.

### (3)  Defendant's Reply

After re-stating its initial position and pointing to additional evidence to support that

position, Georgia-Pacific goes on to argue that the evidence provided by Merritt is irrelevant to

his burden of proving that Georgia-Pacific terminated him because of his race.  Rather, Georgia-

Pacific argues, all Merritt is trying to do is second-guess Georgia-Pacific's investigation.

Georgia-Pacific's argues that Merritt is basing this suit on the idea that it should have believed

him over Wallace and Sanders.  That, however, is not a basis for liability under § 1981.

## III.  Slander

### A.  Defendant's Position

Georgia-Pacific also argues that Merritt's slander claim fails as a matter of law.  Under

Alabama law, Georgia-Pacific argues, a plaintiff must show, as part of his *prima facie* case, (1) a

false and defamatory statement concerning the plaintiff, (2) an unprivileged communication of

that statement to a third party, (3) fault amounting to at least negligence, and (4) the existence of

special harm caused by the publication of the statement.  *McCaig v. Talladega Publishing Co.*,

544 So. 2d 875, 877 (Ala. 1989).  As an initial matter, Georgia-Pacific argues that Merritt has no

first-hand knowledge of which Georgia-Pacific supervisor was telling other employees about

what he had been accused of; instead, other people told him what they had heard.  *See* Def. Ex. 1

at 173-79.

Next, Georgia-Pacific argues, summary judgment should be granted because the alleged

statements were in fact true.  Georgia-Pacific points to Merritt's deposition, in which he stated

that he had heard that he had been *accused* of exposing his penis to fellow employees and that he

had gone to the doctor for an examination of his penis. *See* Def. Ex. 1 at 175, 178-79. According to Georgia-Pacific, all of this is true, and thus it cannot be liable for slander.[6]

Finally, Georgia-Pacific argues that it did not publish the alleged statements. The Alabama Supreme Court has held that communications among employees in the course of transacting the company's business and in the proper scope of the employer's duties do not constitute publication to a third party. *See Atkins Ford Sales, Inc. v. Royster*, 560 So. 2d 197, 200-01 (Ala. 1990). Thus, communications by managerial employees to other employees or managers for the purpose of investigation misconduct would not be publication to a third party. *See K-Mart Corp. v. Pendergrass*, 494 So. 2d 600 (Ala. 1986). Any communications between Georgia-Pacific's management and its employees for the purpose of conducting the investigation or for communicating the company's intolerance of that type of conduct would therefore not constitute publication to a third party. Moreover, if any communications were made outside of this limited context, Georgia-Pacific argues, the manager and/or employee in question would have been acting outside the scope of his employment, given that Georgia-Pacific had made it very clear that the results of the investigation were to be kept confidential. As such, that employee's liability cannot be imputed to Georgia-Pacific. *See K-Mart*, 494 So. 2d at 605.

B. Plaintiff's Response

Again, Merritt, while not necessarily disputing Georgia-Pacific's evidence, points to additional evidence to support his claim. First, he states that numerous people, both from work and outside of work, have approached him and asked him if he was fired for exposing his penis to Wallace and Sanders. *See* Pl. Ex. 1 at ¶ 6. He also files the affidavits of Charles Oden and

---

[6]Georgia-Pacific also points to deposition testimony where Merritt stated that he is not alleging that any of Georgia-Pacific's management lied. *See* Def. Ex. 1 at 184-85.

Reginald Merritt, who state that they heard gossip about Merritt getting fired because he showed his penis to Wallace and Sanders. *See* Pl. Exs. 3-4. Specifically, Reginald Merritt states that he remembers Gooden discussing Merritt's situation. *See* Pl. Ex. 4 at ¶ 3. Gooden is part of Georgia-Pacific's management. Reginald Merritt also states that people in the community not employed by Georgia-Pacific were discussing Merritt's situation. *See* Pl. Ex. 4 at ¶ 5. Merritt argues that this gossip could only have started by Georgia-Pacific leaking what had happened.

### C. Defendant's Reply

As with the other claims, Georgia-Pacific simply re-states its initial argument and points to additional evidence in the record to support that position. *See* Def. Reply Br. at 11-13.

## IV. Judicial Estoppel: The Bankruptcy Proceedings

### A. Defendant's Position

Finally, Georgia-Pacific argues, even if Merritt has met his burden on the discrimination and slander counts, his claims are nonetheless barred by judicial estoppel, because he did not disclose this action during his bankruptcy proceedings. Judicial estoppel precludes a party, as a matter of law, from adopting a position that conflicts with a position taken in earlier litigation and is applied to the calculated assertion of divergent sworn positions. *See Burns v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1284-88 (11th Cir. 2002). According to Georgia-Pacific, the Eleventh Circuit has recently held that judicial estoppel can be applied to prevent a debtor from later pursuing a claim he failed to schedule as an asset in his bankruptcy. *See Burns*, 291 F.3d at 1284-88.[7] *See also Chandler v. Samford Univ.*, 35 F. Supp. 2d 861, 863 (N.D. Ala. 1999). Here, Georgia-Pacific notes, Merritt knew about his potential claim against it before he filed his

---

[7]Georgia-Pacific also notes that the duty to disclose assets continues even after the bankruptcy petition has been filed. *See* 11 U.S.C. §§ 521(a), 541(a)(7).

bankruptcy petition, and he has amended his bankruptcy filings twice since this lawsuit was filed, yet he has failed to disclose this lawsuit to the bankruptcy court. *See* Def. Exs. 6-9. Moreover, Merritt cannot claim he is ignorant of the bankruptcy requirements, as this is his third bankruptcy in ten years. *Id.* According to Georgia-Pacific, "the success of our bankruptcy laws requires a debtor's full and honest disclosure," *Burns*, 291 F.3d at 1288, and judicial estoppel was designed to prevent just this type of conduct.

B. Plaintiff's Response

Merritt argues that *Burns* does not apply, because unlike in *Burns*, this lawsuit was not pending at the time the bankruptcy petition was filed. Moreover, while the suit was pending when the petition was amended, Merritt argues, he did not know that he had to add the lawsuit. More importantly, the amendment requires that Merritt pay his creditors 100% of what is owed to them. Thus, Merritt contends, it is clear that he did not intentionally omit this lawsuit so that he could hide a potential recovery from his creditors or the bankruptcy court. As noted in *Burns*, the failure to disclose potential assets can be classified as "inadvertent" when the debtor "has no motive for their concealment." 291 F.3d at 1287. Moreover, even if this court agreed with Georgia-Pacific, the court in *Burns* specifically held that judicial estoppel would apply only to monetary relief, not to claims of injunctive relief. Here, Merritt argues, he is asking for injunctive relief in addition to monetary relief, so his case should be allowed to proceed. Merritt also argues that he should be allowed time to amend his bankruptcy petition to include this lawsuit as an asset.

C. Defendant's Reply

Georgia-Pacific argues that allowing Merritt to amend his bankruptcy petition to include

this lawsuit would contradict the Eleventh Circuit's observation that "the success of our bankruptcy laws requires a debtor's full and honest disclosure," *Burns*, 291 F.3d at 1288, and would encourage debtor's to leave lawsuits off of their bankruptcy petitions in hopes of later amending their petitions if they get caught.  It also takes issue with Merritt's assertion that he did not know he had to list this lawsuit, given that this is his third bankruptcy.

### CONCLUSIONS OF THE COURT

After considering the evidence and the arguments of the Parties, the court concludes that there is no reasonable inference of racial discrimination.  This decision is premised, *inter alia*, on the fact that Plaintiff's replacement was of the same race, that one of the alleged comparators was of the same race, that the situations of the alleged comparators are not similar, and certainly not "nearly identical," and finally, that the Plaintiff has not rebutted the Defendant's articulated reasons with substantial evidence.  There may be other reasons for the court's conclusions.  Ultimately, there is no reasonable inference that the decision resulted from intentional discrimination or retaliation.

The court also concludes that there is no merit to the defamation claim.  Even assuming that the alleged statements were defamatory[8], the alleged references to Plaintiff's conduct could have emanated from a number of sources.  The court further adopts the Defendant's reasoning on the issue.

This ____ day of January, 2003.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[8]The court does not so find.

17